# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

ONE CELLULAR PHONE, DESCRIBED IN
ATTACHMENT 3-A, LOCATED AT 6045 CENTURY
OAKS DRIVE, CHATTANOOGA, TENNESSEE 37416

)
)
)
)
)
)

Case No. 1:24-mj- 218

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment 3-A, incorporated herein.

located in the _____Eastern_____ District of _____Tennessee_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment 3-B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1) (A), and 846 | Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Methamphetamine |

The application is based on these facts:

See affidavit in support of search warrant, incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Richard Thomas, HSI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 9, 2024

_____
*Judge's signature*

City and state: Chattanooga, Tennessee

Hon. Christopher H. Steger, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT 3-A**

The property to be searched is a rose gold Apple iPhone cellular phone, identified as "Target Cell Phone #3," which is currently located at 6045 Century Oaks Dr., Chattanooga, Tennessee 37416. Pictured below is Target Cell Phone #3:



This warrant authorizes the forensic examination of Target Cell Phone #3 for the purpose of identifying the electronically stored information described in Attachment 3-B.

**ATTACHMENT 3-B**

All records on Target Cell Phone #3, described in Attachment 3-A, that relate to violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 that involve Lara Kate PETERSON, Bradden Kyle BROWN, and other associates, including:

    a. Telephone numbers;

    b. Caller identification;

    c. Call history;

    d. Telephone address logs and contact information;

    e. SMS and text messages;

    f. Digital photographs;

    g. Digital videos;

    h. Voice messages;

    i. Subscriber or owner information;

    j. Any other electronic data stored on the device that identifies or links the above-identified individual with criminal associates and customers to the illegal organization;

    k. GPS information;

    l. Types, amounts, or prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    m. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    n. All bank records, checks, credit card bills, account information, or other financial records;

    o. All information stored, contained, or accessible through applications that have been installed on the device; and

    p. Evidence of user attribution showing who used owned Target Cell Phone #3 at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THREE CELLULAR PHONES LOCATED AT 6045 CENTURY OAKS DRIVE, CHATTANOOGA, TN 37416 | 1:24-mj- 216 <br> 1:24-mj- 217 <br> 1:24-mj- 218 |

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, Richard Thomas, being duly sworn, hereby state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the *Federal Rules of Criminal Procedure* for a search warrant authorizing the examination of property—three electronic devices, as more fully described in Attachments 1-A, 2-A, and 3-A —that is currently in law enforcement possession, and the extraction from that property of electronically stored information that correspond to Attachments 1-B, 2-B, and 3-B. Target Cell Phone #1 is associated with Attachments 1-A and 1-B. Target Cell Phone #2 is associated with Attachments 2-A and 2-B. Target Cell Phone #3 is associated with Attachments 3-A and 3-B.

2.      I am a Task Force Officer with Homeland Security Investigations and a sworn State Trooper with the Tennessee Highway Patrol. I graduated from the Tennessee Highway Patrol Academy in 2011 and throughout my law enforcement service, have maintained, as a primary career path, the investigation and seizure of illegal narcotics. I have served as a Trooper on the Interdiction Plus Team with a focus on illegal contraband and its proceeds traversing the State of Tennessee for over

1

nine years. I served as a Task Force Officer with the Drug Enforcement Administration for one year. I am currently a Sergeant with Tennessee Highway Patrol Criminal Investigation Division and a TFO at HSI Chattanooga.

3. During my experience and tenure as a Trooper and TFO, I have investigated and participated in investigations of organized criminal groups violating federal drug trafficking laws. As part of my official duties, I have utilized most traditional law enforcement techniques, including visual surveillance, interviewing of witnesses, the execution of search warrants, the use of cooperating witnesses, the seizure of drug evidence, the controlled purchases of drug evidence, and undercover techniques. I have debriefed and interviewed numerous cooperating defendants regarding the habits, practices, methods, and general behavior of criminal groups engaged in organized criminal activity. I have received specialized training in conducting drug investigations and have attended numerous conferences and lectures featuring government attorneys and law enforcement officials. Over the course of my career, I have participated in numerous arrests of known drug traffickers and their associates. This experience has afforded me an opportunity to observe and investigate methods, schemes, and operations used by organized groups, including the use of cellular telephones and of digital display paging devices, and their use of numerical codes and code words to conduct their transactions.

4. Based on my training and experience, I know that individuals who deal in illegal narcotic activities take or cause to be taken photographs of them, their associates, their property, their proceeds, and/or their illicit products. These

individuals usually maintain these photographs in their possession or in areas they control, including their cellular phone(s). That is, individuals and organizations who smuggle and distribute illegal narcotics commonly utilize cellular phones to further their illicit activities. Further, such cellular phones are known to contain and store text messages, audio messages, call logs, photos, videos, or e-mails that reflect the names, addresses, or telephone numbers for those contacted and associated to their illegal organization.

5.     I also know, based on my training and experience, that individuals and organizations who deal in illegal narcotic activities are known to utilize digital applications, or as commonly described as "apps," installed on their cellular phones as an alternative storage and/or communication methods, via audio messages, text messages, and/or telephone calls, to further their illicit activities and elude law enforcement. The information may be stored directly on the device, or it may be stored elsewhere but is accessible through the "apps" on the device. Some apps will contain Global Positioning System data or allow access to GPS data elsewhere.

6.     Further, based on my training and experience, I know that individuals who deal in illegal narcotic activities use the GPS data stored within devices and/or apps on the device to share with other members/associates of the criminal organization as a sort of indirect communication. Some devices capture and store GPS data automatically.

7.     Based on my training and experience, involvement in the investigation, and information obtained from other agents and witnesses, the facts in this affidavit

show that probable cause exists that Lara Kate PETERSON and Bradden Kyle BROWN have violated 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. There is also probable cause to search the information described in Attachments 1-A, 2-A, and 3-A, incorporated herein, for evidence of this crime and fruits of this crime, as described in Attachment 1-B, 2-B, and 3-B, incorporated herein.

8.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9.     The following properties to be searched: one black Nokia "flip" cellular phone ("Target Cell Phone #1"), as more fully described in Attachment 1-A; one blue Apple iPhone cellular phone ("Target Cell Phone #2"), as more fully described in Attachment 2-A; and one rose gold Apple iPhone cellular phone ("Target Cell Phone #3"), as more fully described in Attachment 3-A, all of which are located at HSI Chattanooga, 6045 Century Oaks Drive, Chattanooga, Tennessee 37416.

10.     The applied-for warrants would authorize the forensic examination of Target Cell Phones #1-3, as further described in Attachments 1-A, 2-A, and 3-A, that correspond to electronically stored data described in Attachments 1-B, 2-B, and 3-B respectively.

## PROBABLE CAUSE

11.     On June 4, 2024, HSI Chattanooga and Collegedale Police Department initiated a joint investigation into the narcotics distribution activities of Lara Kate PETERSON and Bradden Kyle BROWN. This investigation began following a traffic stop on June 1, 2024, where PETERSON was arrested for possessing approximately 702.5 grams of methamphetamine.  Around 01:25 hours, CPD officers observed a motorcycle (make, model, and license plate unknown) and a black 2023 Toyota Camry traveling together near the 10,000 block of Apison Pike in Collegedale, Tennessee, within the Eastern District of Tennessee.  When the Camry began driving in a construction lane, officers initiated a traffic stop.  Simultaneously, the motorcycle driver attempted to distract the officers by riding erratically in the same lane before eventually leaving the area.

12.     The driver and sole occupant of the Toyota Camry was identified as PETERSON.  She initially denied knowing the motorcycle driver, then later admitted to knowing him but claimed he was a friend's brother with whom she had traveled from Knoxville to Collegedale on May 31, 2024.   PETERSON stated that the motorcycle driver, who had been in her vehicle, purchased the motorcycle that night. During the stop, officers observed a handgun in the passenger door pocket and asked PETERSON to exit the vehicle.  After initially refusing, she complied, and officers found a second handgun on the front passenger seat and detected the smell of marijuana. PETERSON confirmed there was marijuana in the vehicle.

13.     Based on the odor of marijuana and PETERSON's confirmation, officers conducted a probable cause search of the Camry. They found a backpack containing PETERSON's ID, two large bags of methamphetamine (approximately 702.5 grams), drug paraphernalia, two handguns (one reported stolen), $2,615 in suspected drug proceeds, three cellular phones (Target Cell Phones #1, #2, and #3), and small amounts of various narcotics.

14.     PETERSON was arrested and charged with multiple violations of Tennessee law, including Possession of Methamphetamine with Intent to Sell (T.C.A. § 39-17-417) and Possession of a Firearm During the Commission of a Dangerous Felony (T.C.A. § 39-17-1324). She was transported to the Hamilton County Jail. On June 3, 2024, CPD obtained a state search warrant for a secondary search of the Camry in police impound. During this search, an additional 88.2 grams of methamphetamine was discovered in the same backpack, bringing the total to approximately 790 grams. All seized items were secured at CPD headquarters.

15.     On June 4, 2024, HSI Special Agent Allan Cannon and Detective Robert O'Daniel conducted a post-*Miranda* interview of PETERSON. She admitted to her involvement in a methamphetamine distribution conspiracy with BROWN, her boyfriend. PETERSON stated that from May 1 to May 29, 2024, she and BROWN made multiple trips to Norcross, Georgia, to purchase kilogram quantities of methamphetamine from unidentified Hispanic males. PETERSON, who had a valid driver's license, would rent vehicles and drive BROWN to these transactions, where they purchased between 20 to 30 kilograms of methamphetamine.

16.     PETERSON stated she was present for all transactions and that BROWN distributed the methamphetamine in Lenoir City and Knoxville, Tennessee. BROWN sold the methamphetamine at $225 per ounce or $1,600 for four ounces. PETERSON's compensation was in the form of financial support from BROWN, who paid her bills and took care of her daughter.

17.     PETERSON revealed that BROWN handled all communications with the suppliers and buyers using two cellular phones, identified as Target Cell Phones #1 and Target Cell Phone #2.  PETERSON used her phone, identified as Target Cell Phone #3, as a GPS for their trips to Norcross.  She believed the locations of these meetings were still saved in her phone.  She stated that the methamphetamine seized during her arrest was the remainder of a two-kilogram purchase made on May 29, 2024.

18.     On June 20, 2024, SA Cannon reviewed recorded phone calls made by PETERSON while in custody.  Several calls between June 1 and June 11, 2024, were made to BROWN, discussing her arrest and his involvement.  During a call on June 4, 2024, at 19:51 hours, BROWN stated, "I tried to get him off of you," referring to his attempt to distract CPD officers with the motorcycle during the traffic stop.  In another call on the same day, at 21:11 hours, BROWN said, "I didn't think nothing about putting nothing on my back, baby," referring to the backpack containing the methamphetamine.

19.     SA Cannon took custody of the recovered methamphetamine and submitted it to the DEA Laboratory in Nashville for analysis.  The Lab confirmed the

substance as ice methamphetamine with a total net weight of 777.08 grams at 98% purity.

20.     On July 9, 2024, SA Cannon took custody of the three cellular phones (Target Cell Phones #1-3) recovered from PETERSON's arrest.  These phones are secured at the HSI Chattanooga field office.  Based on training and experience, these phones are believed to contain evidence material to the investigation and remain in the same condition as when first seized.  These warrants are sought to ensure compliance with the Fourth Amendment and other applicable laws for the examination of the phones.

## TECHNICAL TERMS

21.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   GPS: A Global Positioning System is an electronic navigation device and/or a feature often contained within a cellular phone which can be utilized within its "apps", photographs, and/or videos, etc. A device's GPS captures, records, and displays its current, and past, locations. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22.   Based on my training, experience, and research, I know that Target Cell Phones #1-3 have capabilities that allow them to serve as wireless telephones, digital cameras, and GPS navigation devices. In my training and experience, examining

data stored on devices of this type can uncover, among other things, evidence that reveal or suggest who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period on the device.  This information can sometimes be recovered with forensics tools.

24.     *Forensic Evidence.* As further described in Attachments 1-B, 2-B, and 3-B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how Target Cell Phones #1-3 were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on Target Cell Phones #1-3 because:

   a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22.   *Nature of Examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

23.   *Manner of Execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.    I submit that this affidavit supports probable cause for search warrants authorizing the examination of Target Cell Phones #1-3, described in Attachments 1-A, 2-A, and 3-A, to seek the items described in Attachment 1-B, 2-B, and 3-B.

Respectfully Submitted,

RICHARD THOMAS
HSI TASK FORCE OFFICER

Subscribed and sworn to before me on this 9th day of August 2024.

HON. CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT 1-A

The property to be searched is a black Nokia "flip" cellular phone, identified as "Target Cell Phone #1," which is currently located at 6045 Century Oaks Dr., Chattanooga, Tennessee 37416. Pictured below is Target Cell Phone #1:





This warrant authorizes the forensic examination of Target Cell Phone #1 for the purpose of identifying the electronically stored information described in Attachment 1-B.

**ATTACHMENT 1-B**

All records on Target Cell Phone #1, described in Attachment 1-A, that relate to violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 that involve Lara Kate PETERSON, Bradden Kyle BROWN, and other associates, including:

    a.  Telephone numbers;

    b.  Caller identification;

    c.  Call history;

    d.  Telephone address logs and contact information;

    e.  SMS and text messages;

    f.  Digital photographs;

    g.  Digital videos;

    h.  Voice messages;

    i.  Subscriber or owner information;

    j.  Any other electronic data stored on the device that identifies or links the above-identified individual with criminal associates and customers to the illegal organization;

    k.  GPS information;

    l.  Types, amounts, or prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    m. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    n.  All bank records, checks, credit card bills, account information, or other financial records;

    o.  All information stored, contained, or accessible through applications that have been installed on the device; and

    p.  Evidence of user attribution showing who used owned Target Cell Phone #1 at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or

stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## ATTACHMENT 2-A

The property to be searched is a blue Apple iPhone cellular phone, identified as "Target Cell Phone #2," which is currently located at 6045 Century Oaks Dr., Chattanooga, Tennessee 37416. Pictured below is Target Cell Phone #2:



This warrant authorizes the forensic examination of Target Cell Phone #2 for the purpose of identifying the electronically stored information described in Attachment 2-B.

**ATTACHMENT 2-B**

All records on Target Cell Phone #2, described in Attachment 2-A, that relate to violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 that involve Lara Kate PETERSON, Bradden Kyle BROWN, and other associates, including:

    a.  Telephone numbers;

    b.  Caller identification;

    c.  Call history;

    d.  Telephone address logs and contact information;

    e.  SMS and text messages;

    f.  Digital photographs;

    g.  Digital videos;

    h.  Voice messages;

    i.  Subscriber or owner information;

    j.  Any other electronic data stored on the device that identifies or links the above-identified individual with criminal associates and customers to the illegal organization;

    k.  GPS information;

    l.  Types, amounts, or prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    m.  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    n.  All bank records, checks, credit card bills, account information, or other financial records;

    o.  All information stored, contained, or accessible through applications that have been installed on the device; and

    p.  Evidence of user attribution showing who used owned Target Cell Phone #2 at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

<u>**ATTACHMENT 3-A**</u>

The property to be searched is a rose gold Apple iPhone cellular phone, identified as "Target Cell Phone #3," which is currently located at 6045 Century Oaks Dr., Chattanooga, Tennessee 37416. Pictured below is Target Cell Phone #3:



This warrant authorizes the forensic examination of Target Cell Phone #3 for the purpose of identifying the electronically stored information described in Attachment 3-B.

## ATTACHMENT 3-B

All records on Target Cell Phone #3, described in Attachment 3-A, that relate to violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 that involve Lara Kate PETERSON, Bradden Kyle BROWN, and other associates, including:

  a. Telephone numbers;

  b. Caller identification;

  c. Call history;

  d. Telephone address logs and contact information;

  e. SMS and text messages;

  f. Digital photographs;

  g. Digital videos;

  h. Voice messages;

  i. Subscriber or owner information;

  j. Any other electronic data stored on the device that identifies or links the above-identified individual with criminal associates and customers to the illegal organization;

  k. GPS information;

  l. Types, amounts, or prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

  m. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

  n. All bank records, checks, credit card bills, account information, or other financial records;

  o. All information stored, contained, or accessible through applications that have been installed on the device; and

  p. Evidence of user attribution showing who used owned Target Cell Phone #3 at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**ATTACHMENT 1-B**

All records on Target Cell Phone #1, described in Attachment 1-A, that relate to violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 that involve Lara Kate PETERSON, Bradden Kyle BROWN, and other associates, including:

    a.  Telephone numbers;

    b.  Caller identification;

    c.  Call history;

    d.  Telephone address logs and contact information;

    e.  SMS and text messages;

    f.  Digital photographs;

    g.  Digital videos;

    h.  Voice messages;

    i.  Subscriber or owner information;

    j.  Any other electronic data stored on the device that identifies or links the above-identified individual with criminal associates and customers to the illegal organization;

    k.  GPS information;

    l.  Types, amounts, or prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    m. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    n.  All bank records, checks, credit card bills, account information, or other financial records;

    o.  All information stored, contained, or accessible through applications that have been installed on the device; and

    p.  Evidence of user attribution showing who used owned Target Cell Phone #1 at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or

stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.